## GREAT LAKES TOWING CO. v. BETHLEHEM TRANSP. CORPORATION.

Nos. 6175, 6176.

Circuit Court of Appeals, Sixth Circuit.

June 5, 1933.

T. H. Garry, of Cleveland, Ohio (Goulder, White, Garry & McCreary and George William Cottrell, all of Cleveland, Ohio, on the brief), for Great Lakes Towing Co.

T. C. Robinson, of Cleveland, Ohio (Frederick L. Leckie and Holding, Duncan & Leckie, all of Cleveland, Ohio, on the brief), for Bethlehem Transp. Corporation.

Before MOORMAN, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKENLOOPER, Circuit Judge.

Paragraph 17 of the general terms and conditions covering contracts for services of the Great Lakes Towing Company, as contained in its published schedule of rates, provides: "When a vessel is towed or pushed

stern first by one tug, the service will be under the control and direction of the master of the vessel so assisted, and the tug will not be liable for any damages that may be sustained or caused by the vessel coming into contact with any other craft, dock or other object, or by stranding or touching bottom, provided the tug carries out the orders of the vessel master." The steamer Maryland, owned and operated by the Bethlehem Transportation Company, was performing such a maneuver with the assistance of the towing company's tug Yale, backing out from the east side of a pier in Sandusky Harbor, around the end of the pier, stern first, and into a slip to the west. After the stern had been brought around into the mouth of the slip and the bow was being pushed by the tug to the northwest and west to bring the vessel into alignment with the piers, the motion of the bow was not checked in time to prevent its striking the northerly end of the west pier, thus causing the damage herein complained of. The court below found both vessels equally at fault, that the above-quoted provision for limitation of liability did not operate to relieve the tug, and that the damages were therefore properly to be divided. From this part of the decree the towing company appeals (case No. 6175).

■■ We are of the opinion that, had the master of the Yale in fact placed his tug wholly under the control and direction of the master of the Maryland, as is contemplated by paragraph 17 of the general terms and conditions, no liability could have arisen as against the tug or its owners because of anything done or omitted in the performance of the work for which the tug was employed, provided, of course, that the tug carried out the orders of the Maryland's master. In such a case the tug would become the mere motive power instrumentality of the vessel assisted, and the master and crew of the tug, pro tempore, would be regarded as the servants of the tow. Sun Oil Co. v. Dalzell Towing Co., Inc., 287 U. S. 291, 53 S. Ct. 135, 136, 77 L. Ed. 311. But this situation did not arise. The master of the Yale knew exactly what service was required of him and his vessel, and he proceeded to perform that service upon his own initiative, without subordination to, although with the co-operation of, the master of the Maryland. In the case just cited it was assumed that the stranding of the tanker "was not in whole or in part due to any fault" of the tugs. In the case at bar we are of the opinion that those in charge of both vessels were jointly participating in their control and management; that neither master purported to be acting under paragraph 17 of the general terms and conditions, or in subordination to the other; that the masters of both craft were equally at fault; and that the damage to the Maryland was the natural and proximate result of the negligence of both. In such case the court below was right in apportioning the damage. The question was strictly one of fact—whether the tug was negligent in the performance of the duties which it had undertaken to perform and which it was then engaged in performing. Compare, Sturgis v. Boyer, 24 How. 110, 121, 124, 16 L. Ed. 591; The Steamer Syracuse, 12 Wall. 167, 171, 20 L. Ed. 382; Compania de Navegacion, Interior, v. Fireman's Fund Ins. Co., 277 U. S. 66, 48 S. Ct. 459, 72 L. Ed. 787; Stevens v. The White City, 285 U. S. 195, 201, 52 S. Ct. 347, 76 L. Ed. 699.

■■ The cross-appeal (case No. 6176) raises the question of the validity and effect of a section of the towing company's tariff which provides: "3. The rates for towing named herein are made upon the express condition that no claim for delay of any vessel served (whether due to repairs of damage or other causes) for which the Towing Company may be legally liable shall in any case exceed One Hundred Dollars ($100) per calendar day of such delay." The next paragraph of the section further provides that upon notice, and for an additional charge, "the above mentioned limit of liability *upon demurrage claims* may be increased." (Italics ours.) The Maryland was out of commission 2.9 days, due to repairs, and libelant was under an expense of $618.42 for wages of the officers and crew, food, and fuel during this period of detention. Cross-appellant urges that these expenses are to be classified as elements of special damage directly resulting from the negligence, and that they do not fall within the limitation of liability, because, by the use of the word "demurrage" in the second paragraph of the section, the "delay" for which liability is limited by the first paragraph must be regarded as including only that which is within the technical definition of demurrage. The trial court held to the contrary, and limited recovery in respect of this item to $290.

The argument of the cross-appellant is somewhat confused. Conceding that, in the absence of limitation, the owners of the damaged vessel are entitled to recover for the loss of her use, while she is laid up for repairs (The Potomac, 105 U. S. 630, 26 L. Ed. 1194), that the amount to be recovered is the net value of the use of the vessel, that in case

of ambiguity the tariff provision should be strictly construed against the towing company (First National Bank v. Insurance Co., 95 U. S. 673, 24 L. Ed. 563; American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977), that no claim for demurrage, in its strict, original sense of detention of a vessel beyond the time allowed for loading or unloading was made or could have arisen in this case, and that an attempt to limit liability in this respect is invalid if unreasonable, it nevertheless does not follow that the cross-appellant is entitled to recover in full the expenses here claimed.

Principles of construction cannot be applied to vary the meaning of that which is otherwise clear and unambiguous. Cf. Queen of the Pacific, 180 U. S. 49, 52, 21 S. Ct. 278, 45 L. Ed. 419. It is the intent of the parties which must control, and here that intent seems to us manifest. It is the loss incident to the owner's inability to use his vessel because of damage caused to it by the tug, and, until such damage shall have been repaired, that shall not be claimed in excess of $100 per day of delay. The expense of the crew is not a part of the physical damage, but, rather, is inseparable from the claim for loss of use of the vessel. The reason for this is well stated by Judge Hazel in The Texas, 27 F.(2d) 162 (D. C. N. Y.). The reasonableness of the limitation and the power to impose it were approved in that case and by this court in Hand & Johnson Tug Line v. Canada S. S. Lines, Ltd. (C. C. A.) 281 F. 779. Compare, also, Union Pacific R. Co. v. Burke, 255 U. S. 317, 41 S. Ct. 283, 65 L. Ed. 656; Queen of the Pacific, supra. With the reasoning of these decisions we fully agree.

It follows that the decree of the District Court must be affirmed in its entirety, and it is so ordered. The costs will be borne equally by appellant and cross-appellant.