**DUNHAM TOWING & WRECKING CO. v. MORROW S. S. CO.**

**MORROW S. S. CO. v. DUNHAM TOWING & WRECKING CO.**

Nos. 6348, 6349.

Circuit Court of Appeals, Sixth Circuit.

March 6, 1934.

E. B. Hayes, of Chicago, Ill., and T. H. Garry, of Cleveland, Ohio (Kremer, Bran-and & Hayes, of Chicago, Ill., and Goulder, White, Garry & McCreary, of Cleveland, Ohio, on the brief), for Dunham Towing Co.

T. C. Robinson, of Cleveland, Ohio (Holding, Duncan & Leckie, of Cleveland, Ohio, on the brief), for Morrow S. S. Co.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

The Morrow Steamship Company owned the steamer J. E. Savage, which was engaged in navigation and commerce upon the Great Lakes and their connecting waters. The Dunham Towing & Wrecking Company owned and operated harbor tugs in and about the harbor of South Chicago, Ill. On the evening of September 26, 1930, the Savage unloaded a cargo at a dock in the Calumet river at South Chicago between the Elgin, Joliet & Eastern Railroad bridge and the Ninety-Second street bridge. After completing the unloading, she summoned tugs from the towing company to take her through the railroad bridge. The towing company sent two tugs, the New Hampshire, which took the steamer's bow towline, and the Maine, which took the stern towline. Two men were sent ashore from the steamer to cast off the moorings. The steamer either drifted away from her dock or was pulled away from it by the tugs before the men on shore could get back on shipboard. The New Hampshire shoved the bow of the steamer back to the dock, and the stern was worked back by the steamer's engines. As soon as the men were aboard, the Savage blew an "all right" signal, which was answered by the New Hampshire. There is a conflict in the evidence as to whether it was answered by the Maine. About that time the Maine lost her towline, and the New Hampshire proceeded to push the steamer under the bridge, where the steamer's stern struck a bridge piling, disabling her engines. The New Hampshire, being informed of this disability, suggested that the steamer be pushed to anchor in the lake. The master of the steamer, however, asked that she be landed at the Illinois Steel Company's dock on the easterly side of the river, and the captain of the New Hampshire, acceding to this request, proceeded to execute the maneuver, during which the vessel was further damaged by striking the dock. The Maine did not participate in any part of the movement after losing her towline. Thereafter she endeavored, in the course of seemingly unnecessary maneuvers, to secure another line, but was unsuccessful. The Savage being severely damaged in the two collisions, her owner brought this libel in personam against the towing company, alleging that the dam-

age was caused by the negligence of the tugs, Maine and New Hampshire. The District Court found that both of the tugs were negligent, and that the Savage was without fault, and entered a decree in favor of the libelant. This appeal followed.

The trial court found that the two tugs were negligent in that there was no proper understanding between them and they did not properly co-operate in the joint adventure which they had undertaken; that the New Hampshire was negligent in imparting sternway to the steamer against the current when her captain knew that the Maine had lost the stern towline; that she was further negligent in permitting the stern of the steamer to crash into the Illinois Steel Company's dock when she could, with reasonable ease, have steered the steamer in any direction desired; that the Maine was negligent in pulling the stern of the steamer away from the dock before the exchange of "all right" signals; that she was also negligent in permitting herself to get out of position to such an extent that she had to slacken and finally lost the stern towline; and that she was further negligent in failing promptly to recover the line and in her two ineffectual efforts so to do. The appellant does not argue on this appeal that the tugs were properly navigated, but contends that the primary fault was with the Savage, and that such mistakes, if any, as the tugs thereafter made, are to be regarded as errors in extremis and not as faults of navigation.

■■■ On consideration of the record we are unable to say that the finding of the trial court that the two tugs were at fault is against the weight of the evidence. Neither can we say that the evidence preponderates against the finding that the Savage was not at fault. It is first contended by the appellant that, by working her engines without notice to the tugs when she went back to the dock to pick up the two members of the crew, the Savage caused a current which forced the Maine out of position and caused her to lose her line. The preponderance of the evidence, however, does not show that the Maine was forced out of position by the working of the Savage's engines. Furthermore, the steamer was expected to work her engines to get her stern to the dock, and certainly the tugs were not required to be notified that she would do what she was expected to do.

■ Again, the appellant contends that the Savage was at fault in giving the "all right" signal when she must have known that the Maine was out of position. The trial court found that the Maine did not get out of position until after the "all right" signal was given, and, further, that both tugs accepted the "all right" signal. These findings, in our opinion, are supported by the weight of the evidence. After the giving of the signal, the tugs were the dominant mind (The Margaret, 94 U. S. 494, 496, 24 L. Ed. 146), and if the Maine, as appellant now claims, was not then ready to proceed, it was her duty to notify the steamer so that she could get her line back to the dock.

■ The final contention is that after the first collision the steamer should not have insisted on being taken to a dock instead of anchorage in the lake. It is true that at that time the steamer knew that the Maine did not have a towline, but it appears that there was ample time for her to secure one, and that a line was passed to her twice after the request and she failed to secure it due to her own negligent operation. Besides, at the time this request was made, the steamer was in the charge of the tugs, and the captain of the steamer had no reason to suppose that the Maine would not secure a towline or that the vessel could not be safely landed at the dock. The New Hampshire ought to have known whether she could safely execute the necessary maneuver. In endeavoring to do so, she was negligent. The resulting collision, in our view of the evidence, was in no sense attributable to the working of the steamer's engines just prior thereto. The working of the engines at that time was for such a short period as to have no appreciable effect on the movement of the vessel.

■ On the cross-appeal, error is assigned to the refusal of the trial court to allow as damages an item of more than $3,000 which was stipulated between the parties as the ship's expenses for the crew's wages, fuel, etc., during the period of repair. In our opinion, this ruling of the court was justified under Great Lakes Towing Co. v. Bethlehem Transp. Corp., 65 F.(2d) 543, 544 (C. C. A. 6).

The decree is affirmed on both the original and cross appeals.[1]

---

[1] Judge HICKENLOOPER participated in the conference decision, but this opinion was not prepared until after his death.