## GREAT LAKES TOWING CO. v. AMERICAN S. S. CO.
### No. 10485.

Circuit Court of Appeals, Sixth Circuit.

Jan. 12, 1948.

---

[20] § 80, Title 18 U.S.C.A.
[21] Haas v. Henkel, 216 U.S. 462, 479, 30 S.Ct. 249, 254, 54 L.Ed. 569, 17 Ann. Cas. 1112.

W. A. Eldridge and C. A. Schipfer, both of Cleveland, Ohio (McKeehan, Merrick, Arter & Stewart and George William Cottrell, all of Cleveland, Ohio, on the brief; Carl A. Schipfer and W. Alexander Eldridge, both of Cleveland, Ohio, of counsel), for appellant.

Laurence E. Coffey, of Buffalo, N. Y., and L. Y. Ray, of Cleveland, Ohio (Leckie, McCreary, Schlitz & Hinslea, of Cleveland, Ohio, and Richards & Coffey, of Buffalo, N. Y., on the brief; Lucian Y. Ray, of Cleveland, Ohio, and Laurence E. Coffey, of Buffalo, N. Y., of counsel), for appellee.

Before SIMONS, ALLEN, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The suit was in admiralty, brought by the appellee as libelant, for the negligent towage of its steamer Consumers Power by the steam tug Idaho. The District Court found both vessels at fault and entered an interlocutory decree, dividing the damages. While the appellee did not appeal, it filed timely cross-assignments of error.

Consumers Power was a steel construction steam vessel, 512 feet long, with a 56-foot beam. In the early morning of May 8, 1945, it was anchored at Chesapeake and Ohio Dock, Number 3, Toledo, in a 200-foot wide slip, with her starboard side to the dock and her stern 150 feet from its end. On her port side, dock number 2 extended into the river some 800 feet further than number 3. The river channel, which was 500 feet wide, ran at approximately a 45 degree angle to the front ends of the two docks in a north-easterly and south-westerly direction. Buoy 38 marks the north-westerly limits of the channel and is approximately 1400 feet from the end of number 3 dock and 1,000 feet from the end of number 2 dock. Buoy 37 marks the south-easterly limits of the channel and is some 600 feet from the end of number 3 dock and 1,100 feet from the end of number 2 dock. The number 3 dock is approximately 900 feet from the easterly limits of the channel.

At about 4 a. m., the steamer, having completed its loading, called for a tug. Her steam was up, her crew at their stations, the captain in the pilot house, first mate forward, first assistant engineer in the engine room, and an experienced seaman stationed aft. The tug Idaho answered the call, and, without communicating in any way with the steamer, took in its stern line, and, receiving the all right signal, began the tow. The night was dark, the water calm, and the wind moderate. The stern of the vessel was to be turned toward its starboard side, so that its bow would face up the channel, and in order to successfully accomplish this maneuver it was necessary to clear buoys 37 and 38 with the stern and clear extended dock 2 with the bow. It was not, however, successfully accomplished. The stern of the steamer struck buoy number 38, the anchor chain of which fouled its propeller hub, stopping and disabling her engines and damaging her rudder and other parts.

The Court found that the tug had towed the steamer astern too fast, considering the turn to be made, did not swing the stern up-stream soon enough, and was late in giving full-speed-ahead signals to the steamer. It also found that the watchman of the steamer was not competent to accurately report to his pilot house the situation of the stern of the vessel and did not adequately report its proximity to buoy 38. It concluded that the collision and damage were therefore the result of the negligence of the tug. It also concluded that the steamer was likewise at fault in that the master took inadequate precautions for co-operation in the disposition of his crew and in respect to instructions given to them.

■ Although an appeal in admiralty is a trial de novo, the findings will not be set aside unless they are against the clear preponderance of the evidence, The Cleveco, 6 Cir., 154 F.2d 605-609. We consider it unnecessary to detail the testimony of the witnesses and deem it sufficient to say that there was conflict between those in charge of the tug and those on the steamer as to the sternway given the tow, the angles of pull by the tug, and the proximity of stern to buoy 38 when such angles were changed. In this situation, giving consideration to the fact that the District Judge saw and heard the witnesses, we are unable to say that his evidentiary findings or ultimate conclusions were wrong. The decree must therefore be affirmed, unless the provisions of the appellant's tariff here relied upon relieves the tug's owner from liability.

Paragraph 17 of the appellant's tariff is as follows: "When a vessel is towed or pushed stern first by one tug at her bow, or stern, or is being winded by one tug at her bow, the service will be under the direction and control of the master of the vessel so assisted, and the tug will not be liable for any damage that may be sustained or caused by the vessel coming into contact with any other craft, dock, or other object, or by stranding or touching bottom, unless the tug fails to follow orders received by the master of the tug from the master in charge of the vessel being served, and the master and crew of the tug shall be, and shall be held to be, servants and agents of the vessel served. (It is recommended that in stern first and winding operations in those ports where more than one tug is stationed, the vessel order two tugs.)" .

■ Relying upon the above provisions, the appellant contends that it is exempt from all liability for its own negligence. The appellee, on the other hand, urges that Paragraph 17 has no application to the present case, may not be applied to it and is invalid as an unlawful attempt to relieve the tug from liability for its own negligence. It also argues that since the appellant was performing a quasi-public function and was the only towing facility available at the port so that the parties were not on an equal footing its attempt to secure relief from liability should not be condoned.

The efforts of towage companies to relieve themselves of liability for injuries to the tow by contract has a long and involved history. Adjudication has apparently not evolved a principle of construction so clear that it may safely be applied to all cases. In The Syracuse, 12 Wall. 167, 79 U.S. 167, 20 L.Ed. 382, as early as 1872, it was held that a contract providing that towage was to be at the risk of the owner of the tow did not relieve the tug from liability for negligence in the performance of the contract. The same principle was applied in Compania de Navegacion v. Fireman's Fund Insurance Co., 277 U.S. 66, 48 S.Ct. 459, 72 L.Ed. 787. However, in The Oceanica, 170 F. 893, a majority of the Second Circuit Court of Appeals reasoned that since a tug is not a common carrier, when the tow assumes all risks no risks can be meant except those for which the tug is liable, namely, the consequences of her own negligence. The Court recognized, however, that its decision departed from previous adjudications and expressed the hope that the Supreme Court would again pass upon the question. Certiorari was, nevertheless, denied, 215 U.S. 599, 30 S.Ct. 400, 54 L.Ed. 343, and the principle has been applied in the Second Circuit in many subsequent cases. The Cutchogue, 2 Cir., 10 F.2d 671. In the Ninth Circuit, however, Mylroie v. British Columbia Mills Tug & Barge Co., 268 F. 449, it has been held that such provisions are void. While that decision was affirmed, British Columbia Mills Tug and Barge Co. v. Mylroie, 259 U.S. 1, 42 S.Ct. 430, 66 L.Ed. 807, it was upon a curious distinction. The contract provided that the tug would render the tow all reasonable assistance from time to time in any emergency, and also provided that the tug company was not to be held liable for any damage which might happen to the tow. The Court construed the clause to mean that the tug would not be liable for damage if she had rendered all reasonable assistance to the tow in case of an emergency. Since the Court took the view that the evidence disclosed that the tug had not performed according to the contract, it found it unnecessary to consider whether the exemption clause was void. In considering negligence, however, it is dif-

ficult to differentiate between acts of commission and omission or to draw a line between active and passive negligence. We view the case, therefore, as in effect, if not in phrasing, applying the principle of The Syracuse, supra. Were we therefore compelled to decide the case upon the validity of paragraph 17, it might seem to us that decision must be controlled by the doctrine of The Syracuse, whatever might be our own views of the principle or its applicability to the present case. A narrower ground for decision, however, appears.

In Great Lakes Towing Co. v. Bethlehem Transportation Corp., 6 Cir., 65 F.2d 543, 544, in which the present appellant was involved, paragraph 17 of the appellant's tariff was thought to be inapplicable to a maneuver almost identical with that herein described, because the tug did not, in fact, place itself under the control and direction of the tow. There it was said: "We are of the opinion that, had the master of the Yale in fact placed his tug wholly under the control and direction of the master of the Maryland, as is contemplated by paragraph 17 of the general terms and conditions, no liability could have arisen as against the tug or its owners because of anything done or omitted in the performance of the work for which the tug was employed, provided, of course, that the tug carried out the orders of the Maryland's master. In such a case the tug would become the mere motive power instrumentality of the vessel assisted, and the master and crew of the tug, pro tempore, would be regarded as the servants of the tow. * * * but this situation did not arise. The master of the Yale knew exactly what service was required of him and his vessel, and he proceeded to perform that service upon his own initiative, without subordination to, although with the co-operation of the master of the Maryland."

This was precisely what happened in the present case, and a conclusion similar to that reached in the cited case seems to be justified, not only by present facts but by the proviso in paragraph 17 that the tug carries out the orders of the vessel master.

The proviso seems to contemplate that some direction would be sought and given. Here, there was no request for orders and no opportunity furnished for their being given. It would seem that something more was in contemplation by this provision than standard signals, or direction otherwise given that might fail in timeliness during operation. If it should be argued that the view here expressed emasculates the tariff provision if valid, the short answer would be that the master of the tug might readily have put the issue beyond doubt merely by asking the master of the steamer how he wished the maneuver to be performed. The tug, however, proceeded on its own initiative without requesting direction or furnishing an opportunity for direction to be given. We think Great Lakes Towing Co. v. Bethlehem Transportation Corp., supra, rules the present controversy.

It is true that since decision in that case, paragraph 17 of the appellant's tariff was amended by adding thereto the clause "and the master and crew of the tug shall be and shall be held to be the servants and agents of the vessel served." This amendment was perhaps in response to Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311, where a provision in a towing contract that the tug captain while upon the assisted ship would be the servant of her owner was held to be valid. The amendment, however, has no bearing upon the question whether the tug in the present case subordinated itself to the tow to bring paragraph 17 into operation, and the Dalzell case has no application either to the facts here considered or the contract provisions here involved. The master of the tug was not upon the assisted ship.

There is some dispute as to the measure of damages for the loss of the use of Consumers Power while she was undergoing repair. The point is not yet reached, since this appeal is from an interlocutory decree, and no damages have yet been awarded. It will be time enough to resolve that controversy when it is before us.

Decree affirmed.