## FROST v. SALUSKI.

## THE BLUE GODDESS.

### No. 10587.

United States Court of Appeals
Seventh Circuit.

Oct. 27, 1952.

Rehearing Denied Nov. 21, 1952.

Edward T. Howe, Chicago, Ill. (Howard C. Goldman, Chicago, Ill., of counsel), for appellants.

Donald L. Vetter, Chicago, Ill. (Seago, Pipin, Bradley & Vetter, Chicago, Ill., of counsel), for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an action in admiralty by Mary Frost, libelant, against the vessel Blue Goddess, respondent, to recover for damages alleged to have been sustained by the libelant's sailboat, the Mary L, as the result of a collision with the Blue Goddess on October 4, 1948. The District Court, after hearing the case on the oral testimony of the witnesses, and after a stipulation by the parties that the trial judge should act as a commissioner to determine damages, rendered a decree in favor of the libelant for $1,000.00 plus costs. From this decree the respondent, the vessel Blue Goddess, and the claimant, Stanley Saluski, appeal.

The Mary L, a 28 foot sailboat owned by the libelant, and the Blue Goddess, a sailing craft of approximately 60 feet in length owned by the claimant, were, at the time material herein, moored in a harbor connected with Lake Michigan off the foot of Monroe Street, Chicago, Illinois. Both vessels were moored in berths assigned by the Coast Guard. The Mary L was attached to a mooring planted in the harbor by the harbormaster. This was the usual and customary practice in mooring. The Blue Goddess, however, was fastened to a mooring installed by the claimant, Stanley Saluski.

The trial court found, in substance, that on the morning of October 4, 1948, during a strong wind, the Blue Goddess "dragged her mooring and swung into and against the

'Mary L'"; that this contact resulted in damage to the rigging of the Mary L, to some of her planking, and to sections of her rail; and that sometime later, between October 4th and October 7th, due to a loosening by the collision of stays supporting the mast, the mast of the Mary L broke and the boat was then swamped and was in a "near sinking condition." The court found further that at the time of the collision the Mary L was moored and that the cause of the collision between the two vessels was the "insufficiency or inadequacy of the mooring of the Blue Goddess."

In this court the claimant argues, first, that there was no collision between the Blue Goddess and the Mary L; second, that, if such a collision did occur, it was not due to any fault in the mooring of the Blue Goddess but was the result of an inevitable accident; and, third, that it was not shown that there was any negligence in the manner in which the Blue Goddess was moored.

In urging that the findings of the trial court should be disregarded the claimant refers to the general rule of admiralty that on an appeal from a decision in an admiralty case it is a trial *de novo*. However, as this court said in Koehler v. United States, 7 Cir., 187 F.2d 933, 936, the qualification is widely recognized that "the findings of the district court will be accepted by the appellate court unless clearly against the preponderance of the evidence." To the same general effect see Leathem Smith-Putnam Navigation Co. v. Osby, 7 Cir., 79 F.2d 280, 282; The S. S. Bellatrix, 3 Cir., 114 F.2d 1004, 1006; Hodges v. Standard Oil Co. of New Jersey, 4 Cir., 123 F.2d 362, 363; The Paul Dana v. Socony Vacuum Oil Co., Inc., 2 Cir., 165 F.2d 78, 79; Great Lakes Towing Co. v. American S. S. Co., 6 Cir., 165 F.2d 368, 370; Cappelen v. United States, 88 U.S.App.D.C. 11, 185 F.2d 754, 755; Gibbons v. United States, 1 Cir., 186 F.2d 488, 489; Borcich v. Ancich, 9 Cir., 191 F.2d 392, 395.

There was substantial evidence to support the finding of the trial court that the Blue Goddess, in spite of her mooring, was in motion, and that she swung into and against the Mary L and remained in that position until she was removed by members of the Coast Guard. Two disinterested witnesses, Captain Storvak of the yacht Dixonia, which was moored in the same harbor, and Edward Lee Robinson of the Coast Guard, both testified that the Blue Goddess drifted up to and against the Mary L. The boats having thus come together in rough water, damage would naturally result if they were left in that position for any length of time.

One item of damage which it was alleged resulted to the Mary L was that her mast was broken. The witnesses agreed, however, that the mast did not break at the time of the collision. The evidence indicated that some of the stays of the mast were broken at the time of the collision and that this would cause the mast to break within a short time. The subsequent breaking of the mast was thus traced back to the collision.

The claimant, Saluski, insists, that the collision between the two vessels, if there was one, was caused by the stormy weather and rough water on the day of the collision. It is true that the weather on that day was described by various witnesses as being "rough," "a very rough day" and "quite stormy." One witness also said that "the boats were rolling quite bad." Frequently there are days when the weather on Lake Michigan could be accurately so described.

On the other hand, it was undisputed that the Blue Goddess, out of the many boats anchored in the harbor, was the only one which was not held in place by its mooring. It is also significant that the claimant, Saluski, testified that on that day, shortly after the collision, he went down to the harbor and rowed out to his boat in a rowboat and that while he was out there he made a lot of changes in the way the boat (the Blue Goddess) "was tied up." At that time the Blue Goddess was about two or three hundred yards further east in the harbor than it had been the day before.

It would not seem likely that if the weather in the harbor on that day had been as rough as the claimant would now have the court believe, he would have rowed out sev-

eral hundred yards into the harbor by himself in a small rowboat. Considering all of the evidence on the subject of the weather, we find no real support for the contention of the claimant that at the time of the collision there was such an unprecedented storm as to constitute the collision "an inevitable accident" and thus relieve the respondent from the responsibility for the damage to the Mary L. We think the evidence amply supports the finding of the trial court that the cause of the collision was the insufficiency or inadequacy of the mooring of the Blue Goddess.

The claimant, Saluski, insists that the evidence failed to show any negligence in the manner in which his boat was moored. He said that the Blue Goddess was moored to a concrete weight of about 1,500 pounds which was attached by a chain to a mooring can and then from the mooring can attached by a steel cable to the boat. It is admitted that this was not the ordinary type of mooring used in the harbor and that this mooring had been furnished by the claimant, Saluski, and not by the harbormaster who ordinarily furnished moorings in this harbor. We think the evidence, considered as a whole, would amply support the finding of negligence.

In this case the burden was not on the libelant to show negligence. It is an established rule in admiralty that when a vessel at anchor is struck by a moving vessel, it is the burden of the moving vessel to exonerate herself from blame. The Louisiana, 3 Wall. 164, 173, 70 U.S. 164, 173, 18 L.Ed. 85; The Newa, 4 Cir., 267 F. 115, 116; The President Madison, 9 Cir., 91 F.2d 835, 837; The Chickie, 3 Cir., 141 F.2d 80, 82; United States v. South Carolina State Highway Department, 4 Cir., 171 F.2d 893, 896; Burns Bros. v. Long Island R. R. Co., 2 Cir., 176 F.2d 406, 408.

The moving vessel here, the Blue Goddess, and her owner, the claimant Stanley Saluski, failed to show that the Blue Goddess was not at fault.

The judgment is

Affirmed.