**BULL S. S. LINES, Inc., v. THOMPSON.**

No. 9896.

Circuit Court of Appeals, Fifth Circuit.

Dec. 2, 1941.

Rehearing Denied Jan. 6, 1942.

L. Hamilton Lowe, of Corpus Christi, Tex., for appellant.

E. H. Crenshaw, Jr., of Kingsville, Tex., and Harry R. Jones, of Houston, Tex., for appellee.

Before HUTCHESON and McCORD, Circuit Judges, and DAWKINS, District Judge.

McCORD, Circuit Judge.

Guy A. Thompson, Trustee for the San Antonio, Uvalde & Gulf Railroad Company, Debtor, sued Bull Steamship Lines, Incorporated, to recover undercharges upon cars of freight switched at Corpus Christi, Texas. Cross-claim seeking recovery of alleged overcharges was filed by the defendant steamship lines against the plaintiff. The case was tried by the court without a jury, and judgment was entered for the plaintiff for the amount sued for and against the defendant on its cross-claim. Bull Steamship Lines, Incorporated, has appealed.

The port of Corpus Christi was opened on September 14, 1926. On May 1, 1929, the Nueces County Navigation District No. 1, owner of the port facilities and 8.34 miles of railroad track, entered into contract with the San Antonio, Uvalde & Gulf Railroad Company, and four other railroad companies serving Corpus Christi, by which contract the railroad companies took over the management of the switching lines owned by and located upon the property of the District. The contract was submitted to the Interstate Commerce Commission and expressly approved by it on May 7, 1929. Under the terms of the contract, and in actual practice, operation of the properties alternated between the contracting railroad companies. During the period involved in this suit the properties were operated by the plaintiff, appellee.

Bull Steamship Lines, Incorporated, a common carrier of goods by water, transported freight from eastern seaboard points to Corpus Christi. When the boats arrived at the docks in Corpus Christi, they were unloaded direct into freight cars, and such cars were then at Bull's request switched by the plaintiff from the tracks adjacent to the docks to a team track where they were unloaded into trucks.

From May 1, 1936, to April 7, 1937, the plaintiff, at the request of the defendant, switched 832 cars of freight over its facilities at Corpus Christi and charged therefor and was paid by the defendant the sum of $3,124.10. Long after these charges had been paid by the defendant the plaintiff brought this suit contending that a mistake had been made; that the switching operations were governed and controlled by a tariff on file with the Interstate Commerce Commission, which tariff had been in force and effect for the

period of time here in question; and that, therefore, the defendant should have paid the sum of $7,230.06 for the said switching services—a difference of $4,105.96. By its suit it sought to and did recover this amount plus interest from April, 1937.

The defendant admits the performance of the switching service and that such operations were interstate movements, but contends that the amount charged and paid for the period in question was the proper and lawful charge for such services.

Decision must turn squarely upon the provisions of "Item 1" of "Tariff 54-F", which is here set out in full:

Item No. 1.
Rates in dollars and cents per car on all Classes and Commodities loaded by and at the expense of the shipper, and unloaded by and at the expense of the consignee, between points shown below:

| BETWEEN (On the One Hand) | AND (On the Other Hand) | RATE PER CAR |
|---|---|---|
| All points on the facilities operated by the Corpus Christi Terminal Association at Corpus Christi, Texas. | All points on the facilities operated by the Corpus Christi Terminal Association at Corpus Christi, Texas. | *Rate Cancelled |
| | Industries or Team Tracks within established switching limits of Corpus Christi, Tex., on lines named in Note No. 1 below. | $8.10 (See Note 2) |

Note No. 1—San Antonio, Uvalde & Gulf Railroad, St. Louis, Brownsville & Mexico Railway, Texas and New Orleans Railroad, and Texas Mexican Railway.

Note No. 2—The rate of $8.10 per car is a net charge for the transportation service described, and does not include any terminal or other charges as provided for in Texas Lines' Tariff No. 21-J, Agent A. C. Fonda's I. C. C. No. 262, or reissues, or in individual issues of carriers on file with the Interstate Commerce Commission.

*Denotes Reduction.

Our view of the tariff makes it unnecessary to discuss in detail the attacks made on it by appellant. It is without dispute that for the entire period in which the laden freight cars were moved Tariff 54-F was published and in full force and effect. It was the only applicable interstate tariff, and the controlling question here is whether it is plain and unambiguous and clearly fixes the rate contended for by appellee and admits of no other construction.

■ There was no error in refusing to permit the introduction of extrinsic evidence to establish the history of the tariff and the interpretation placed upon it by the plaintiff railroad prior to April, 1937. Magnolia Provision Co. v. Beaumont, S. L. & W. R. Co., D.C., 20 F.2d 384, affirmed, 5 Cir., 26 F.2d 72. Under the terms of the tariff the charge to be made for switching movements over the tracks in question is specific, definite, and clear. The fact that an undercharge has been made cannot become a sanction to strike through by parol evidence or otherwise to destroy the life of this valid tariff. The tariff provides for a charge of $8.10 per car, and principles of construction will not be applied "to vary the meaning of that which is otherwise clear and unambiguous." Great Lakes Towing Co. v. Bethlehem Transportation Co., 6 Cir., 65 F.2d 543, 545. Russell Motor Car Co. v. United States, 261 U.S. 514, 43 S.Ct. 428, 67 L.Ed. 778.

■ Courts may not strike down the plain and unambiguous terms of tariffs set up and approved by the Interstate Commerce Commission. It has long been settled that a published tariff rate is to be treated as though it were a statute binding upon both the carrier and the shipper, and that it must be strictly applied regardless of hardships that may arise from its application in particular cases. Pennsylvania R. R. Co. v. International Coal Mining Co., 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas.1915A, 315; Louisville & N. R. Co. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853, L.R.A.1915E, 665; Beaumont, S. L. & W. R. Co. et al. v. Magnolia Provision Co. et al., 5 Cir., 26 F.2d 72; McFadden v. Alabama Great Southern R. Co., 3 Cir., 241 F. 562.

The judgment is affirmed.