## READING CO. v. DEXTER–CARPENTER COAL CO., Inc.

United States District Court
S. D. New York.
April 13, 1951.

Macklin, Speer, Hanan & McKernan, New York City, John C. Hart, New York City, for plaintiff.

Haight, Deming, Gardner, Poor & Havens, New York City, Edward H. Mahla, New York City, for defendant.

McGOHEY, District Judge.

Plaintiff moves for summary judgment in this action to recover demurrage for the detention of coal cars from September 28, 1946 to November 10, 1946. There is no dispute between the parties as to the facts and it seems to me that under the law plaintiff must have summary judgment.

On September 28, 1946, defendant, having shipped coal to the Port Richmond Coal Piers, Philadelphia, Pa., in plaintiff's cars, registered the SS Ferdinand R. Hassler as the ship which was to take on that cargo. The vessel, manned by a West Coast crew, was prevented from loading by a maritime strike which began on October 1. The strike ended for East Coast crews on October 28, but continued until November 23 for West Coast crews.

Meanwhile, defendant, which was in the coal exporting business and had secured export licenses for other shipments and had chartered ships therefor, had applied to the Interstate Commerce Commission for the necessary permits allowing transportation of those other export shipments to tidewater ports. On November 7, defendant received the following telegram from W. R. Godber, the Commission agent: "Your requests permits export Philadelphia and/or Baltimore piers. Cannot issue additional permits until you dispose cargo on hand Port Richmond since October. Maritime strike settled over two weeks ago. Understand ship you assign still strike bound. Ships plentiful suggest you obtain another ship immediately available."

In addition, defendant's affidavit states that this telegram was supplemented by Mr. Godber's "telephoned order that a substitution must be made immediately."

Thereupon defendant substituted the SS James Wetmore, manned by an East Coast crew, on November 10, and the coal was loaded by November 13.

Plaintiff brought this action after the defendant refused to pay demurrage for the period ending with the registration of the Wetmore on November 10.

Section 6(7) of the Interstate Commerce Act, 49 U.S.C.A. § 6(7), provides: "No carrier, unless otherwise provided by this chapter, shall engage or participate in the transportation of passengers or property, as defined in this chapter, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

■ Rule 3(e) of plaintiff's tariff in effect at that time provided: "A car shall be considered released at the time the vessel registers for the cargo or fuel supply of which the commodities named in Rule 1 dumped into such vessel are a part * * *." The clear meaning of this rule is that in order for a car to be released its cargo must be dumped into the vessel which is registered for that cargo. Registration without a subsequent dumping into the registered vessel is not sufficient to establish a release as of the registration date. Consequently, the cars here were not released until November 10, and plaintiff was entitled to charge demurrage from September 28 to that date.

■ Defendant's argument that the Hassler's registration be tranferred to the

Wetmore can not stand since there is no provision in plaintiff's tariff which would permit that. The fact that such a practice is not prohibited by the tariff does not aid defendant since such a substitution in the absence of an affirmative tariff provision would violate Section 6(7) of the Act.[1]

■ A carrier has no choice but to abide strictly by its filed tariff. As was said by Mr. Justice Hughes: "Under the interstate commerce act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict, and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination."[2]

■ The instant case is an excellent example of the hardship envisioned. Defendant, subjected to a very real economic pressure by Mr. Godber's decision, acted promptly to register the Wetmore. By doing so it made the coal cars available for other service approximately two weeks sooner than they would have been had it maintained its original registration and thereby avoided the payment of any demurrage. These equitable considerations, while perhaps furnishing a basis for a complaint to the Commission attacking the tariff as unreasonable, can not, as I read the decisions, alter the conclusion that the defendant is required to pay the demurrage claimed under plaintiff's tariff.[3]

If there is a procedure available by which the defendant may apply to the Commission for relief from this inequitable result and if defendant wishes to do so, it may make application to me for a stay of

1. Lake Coal Demurrage, 232 I.C.C. 735, 745.

2. Louisville & N. R. R. v. Maxwell, 237 U. S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853.

3. See Atlantic Coast Line R. Co. v. Clinchfield Fuel Co., D.C.W.D.S.C., 94 F.Supp. 992, 994.

execution of this judgment pending the Commission's determination of the question.

Motion granted. Settle order.