**UNITED STATES of America,**
**Appellant,**
**v.**
**C. E. SYKES, Appellee.**
**No. 19550.**

United States Court of Appeals
Fifth Circuit.
Nov. 30, 1962.

persons, notwithstanding legal disabilities of the minor under State law."

Alan S. Rosenthal, Harvey M. Goldberg, Atty., Dept. of Justice, Washington, D. C., William H. Orrick, Jr., Asst. Atty. Gen., Joseph D. Guilfoyle, Acting Asst. Atty. Gen., Donald H. Fraser, U. S. Atty., for appellant.

T. Malone Sharpe, Lyons, Ga., Walter C. Hartridge, II, Bouhan, Lawrence, Williams, Levy & McAlpin, Kirk McAlpin, Savannah, Ga., Sharpe & Sharpe, T. Ross Sharpe, Lyons, Ga., for appellee.

Before TUTTLE, Chief Judge, BROWN, Circuit Judge, JOHNSON, District Judge.

TUTTLE, Chief Judge.

This suit was brought in the District Court for the Southern District of Georgia by the United States [1] to recover penalties assessed against appellee by the Secretary of Agriculture under the Agricultural Adjustment Act of 1938, as amended 7 U.S.C.A. § 1281 et seq. A summary judgment was entered below for appellee and the government has appealed therefrom.

The Secretary of Agriculture pursuant to the Agricultural Adjustment Act established a national marketing quota to be in effect for the 1958–59 marketing year. Within each state farm marketing quotas and acreage allotments were to be established by the County Committees. 7 U.S.C.A. § 1334(c). Appellee was entitled to no wheat acreage allotment for 1958 and thus his farm marketing quota was zero,[2] but pursuant to the Agriculture Regulations he seeded and grew a "mixture" of oats and wheat on a 150-acre farm to feed his livestock. The mixture as planted consisted of four bushels of oats to one bushel of wheat.[3] Since Georgia counties were "wheat mixture counties," this mixture, had it reached maturity and been harvested in such a four to one ratio of oats to wheat, would not have subjected appellee to any penalties.[4] However, during the winter of 1957–58 extremely cold weather killed two-thirds of the oats, making the mixture unsuitable for grazing purposes. Rain later further added to the damage, such that upon harvest in May 1958 the crop was found to contain more wheat than oats.[5]

Pursuant to the Act and Regulations the County Committee determined that the appellee had no wheat acreage allot-

---

[1]. Jurisdiction was invoked under 7 U.S.C.A. § 1376, and 28 U.S.C.A. § 1345.

[2]. The penalty is assessed as follows: a producer is subject to a penalty on the farm marketing excess. This farm marketing excess is the "normal production or the actual production, whichever is the smaller," of the excess acreage. The excess acreage is that acreage over the farm wheat acreage allotment. Since the appellee had no acreage allotment, his excess acreage would be all the acreage that he planted in wheat, 150 acres in this case. See 7 U.S.C.A. §§ 1335, 1339, 1340.

[3]. Appellee asserted by affidavit that this mixture was recommended by the Experimental Station at Tifton, Georgia.

[4]. The Regulations provide:
" 'Wheat mixture' means a mixture of wheat and other small grains which, (1) when seeded, contained less than 50 percent of wheat by weight, and (2) when harvested, produced less than 50 percent of wheat by weight."
Wheat Marketing Quota Regulations For The 1958 and Subsequent Crop years, 7 C.F.R. 728.85ly.
" 'Wheat acreage' means any acreage planted to wheat * * * excluding any acreage (1) of a wheat mixture in wheat mixture counties * * *. Id., 728.85lv.

[5]. "An acreage will not be considered as having been devoted to a wheat mixture if the crops other than wheat fail to reach maturity and the wheat is permitted to reach maturity." Id., 7 C.F.R. 728.85ly.

ment,[6] had 150 acres of excess [7] wheat acreage, and that this acreage normally yielded 12 bushels an acre, totalling 1800 bushels of farm marketing excess which was subject to a total penalty of $1,962.-00. Appellee was notified of these determinations and of his right to seek a downward adjustment of his farm marketing excess and of his right to an administrative review of his farm marketing excess. However, he followed none of the remedies available to him, and instead, chose to attack the County Committee's determination in the proceeding below brought by the government to collect the assessed penalty.

The government's main argument on appeal is that since appellee never sought any administrative review of the County Committee's determinations, those determinations became final and cannot be collaterally attacked in this suit to collect the penalties.[8] Then the government takes the position that even if it is wrong in this regard, appellee would be subject to the penalties for the wheat produced, since it is undisputed that the final crop as harvested contained more wheat than oats.[9]

Since we find for the government on its first point on appeal, viz., that appellee may not collaterally attack the County Committee's determination, we do not need to determine, nor do we comment on, the merits of the penalty which was assessed against appellee.

Notice of a determination of each producer's farm marketing quota and excess must be mailed to the producer. 7 U.S.C.A. § 1362. This notice was mailed to appellee on July 29, 1958. The notice informed the defendant of the provisions of law relating to a downward adjustment in the farm marketing excess. 7 U.S.C.A. § 1340. Under this section a producer may apply to the Secretary of Agriculture for a downward adjustment in his farm marketing excess if the actual production of the excess acreage is less than the normal production thereof.

Within fifteen days after the notice to the producer of his quota and excess, the farmer may, if he is dissatisfied with his farm marketing quota, have such quota reviewed by a local review committee, composed of three farmers who were not members of the local committee which determined the farm acreage allotment, the normal yield, or the farm marketing quota for such farm. If such a review is not sought, the original determination of the farm marketing quota shall be final. 7 U.S.C.A. § 1363. Appellee did not seek such review.

Also if a farmer is dissatisfied with the determination of the review committee he may, within fifteen days from the notice of the review committee, have the determination reviewed by a United States District Court or any state court having general jurisdiction, 7 U.S.C.A. § 1365. This review shall be limited to questions of law, and the findings of fact by the review committee shall be conclusive if supported by evidence. 7 U.S.C.A. § 1366.[10] Appellee did not seek this review either.

Finally, and we believe controlling, 7 U.S.C.A. § 1367 provides:

"Notwithstanding any other provision of law, the jurisdiction con-

---

6. That he had no wheat acreage allotment must have been determined prior to the time that he seeded the mixture, although the record and briefs do not set this forth.

7. His entire 150-acre farm was excess since he had no acreage allotment.

8. The government in particular emphasizes that this portion of its argument is not bottomed on the doctrine of exhaustion of administrative remedies, but that of collateral attack.

9. Appellee urges that the wheat must be "marketable" in order to fit within the quota restrictions and since his wheat was unfit for consumption due to the freeze and rain, (it even killed 18 of his cows he asserts by affidavit) it was not "marketable."

10. Additional evidence, if material, may be required to be submitted if the party seeking review gives a satisfactory reason for failing to adduce this evidence before the review committee. 7 U.S.C.A. § 1366.

ferred by said sections to review the legal validity of a determination made by a review committee pursuant to said sections shall be exclusive. No court of the United States or of any State shall have jurisdiction to pass upon the legal validity of any such determination except in a proceeding under said sections."

This section, read along with 7 U.S.C.A. § 1363,[11] clearly deprives the district court in a proceeding to collect the penalties of reviewing the County Committee's determination. United States v. Jeffcoat, 272 F.2d 266 (4 Cir., 1959); Miller v. United States, 242 F.2d 392 (6 Cir., 1957); United States v. Stangland, 242 F.2d 843 (7 Cir., 1957); United States v. Johnson, 155 F.Supp. 898 (W.D.Ark. 1957); United States v. Lillard, 143 F. Supp. 113 (W.D.Mo.1956).

Appellee claims that he did not follow any of the allowed methods of review because the action of the County Committee was so blatantly wrong that he saw no need for review, and that he saw no hope for his cause via those channels.[12] This, of course, is not sufficient reason to avoid the effects of the clear mandate of, and the reasons behind, the statutes and regulations providing for review of the local county committee's determination. Had appellee followed the prescribed remedies he could have urged before the committee the questions he urged before the district court and now urges

on appeal. Neither legal nor factual questions may now be raised, appellee having failed to raise them in the proper manner.[13] The decision thus became final and binding upon appellee and immune from collateral attack.

The decision of the district court is reversed and remanded for judgment to be entered for the government.

---

11. This is the section which provides for the review of the original county committee's determination. The section closes by providing that "Unless application for review is made within such period, the original determination of the farm marketing quota shall be final."

12. Appellee claims that the County Committee was "incompetent to decide the legal question of whether the wheat mixture was subject to a farm marketing quota." First of all, this question is not a legal one, but a factual one within the competence of the County Committee's determination. Secondly, section 1366 provides a method by which the farmer may obtain review of his legal questions. By failing to utilize these methods of review he is not precluded from attacking or now raising them.

13. The adequacy of the administrative remedy, with its provision for judicial review, is not questioned. The remedy is appropriate to an effective administration of the Act and an efficient policing of the Act's restrictions. Had the defendant employed it, inspections of the fields before plowing would have avoided the factual dispute, for the state of the harvest could have been ascertained with certainty. United States v. Jeffcoat, 272 F.2d 266, 271 (4 Cir., 1959). The same could be said of the appellee. Had he employed the administrative remedies, inspections could have been made of his grain to determine if it was marketable at harvest time.