**ZACHRY–DILLINGHAM, a Joint Venture, Appellant,**

v.

**AMERICAN PRESIDENT LINES, LTD., Appellee.**

No. 4–85–00527–CV.

Court of Appeals of Texas, San Antonio.

Sept. 16, 1987.

Rehearing Denied Oct. 28, 1987.

Timothy Patton, San Antonio, for appellant.

Jonathan Pauerstein, San Antonio, John F. Unger, Robert Etnyre, Houston, for appellee.

Before CADENA, C.J., and BUTTS and CANTU, JJ.

CADENA, Chief Justice.

Plaintiff, Zachry–Dillingham, a joint venture, appeals from an order granting sum-

mary judgment for defendant, American President Lines, Ltd.

Plaintiff was awarded a contract for the construction of canals and associated structures for an irrigation system in Sri Lanka. The construction required the use of heavy equipment and other supplies that required shipment from this country to Sri Lanka. Timely delivery to Sri Lanka was essential in order for plaintiff to fulfill its contract.

In May and June, 1982, defendant represented that it would ship the equipment and materials to Sri Lanka at a cost to plaintiff of $150.00 per 2,240 pounds or 40 CFT. Defendant acknowledged that the quoted rate was not then in effect but guaranteed that revised tariffs reflecting the quoted rates would be filed with the appropriate federal agency once it was awarded the contract. Defendant promised plaintiff that the quoted rates would be "all inclusive" and represented that the quoted rates would be in effect no later than June 21, 1982.

On June 24, defendant confirmed the rates in writing and reported that the quoted rates had not become effective on June 21 as expected, but would be in effect by the end of the following week. Relying on these representations, plaintiff agreed to have defendant ship the equipment and supplies.

After shipping began, plaintiff realized that defendant was (1) charging rates in excess of those quoted; (2) charging different rates for shipments originating in Houston from those shipments originating on the west coast; (3) charging additional fees for services which it had represented would be included in the "all inclusive" rate; and (4) charging on the basis of whichever method of computation produced the greatest income to defendant rather than, as defendant had promised, classifying the cargos by the greater number of tons as determined by weight or cubic measurement. When plaintiff protested, defendant said that the payments would have to be made as billed or the cargo would not be released to plaintiff in Sri Lanka. Since

delivery of the equipment and supplies was necessary to enable plaintiff to fulfill its contractual obligations, plaintiff paid the amounts demanded by defendant under protest and filed this suit.

Plaintiff alleged that defendant was guilty of common law fraud by inducing plaintiff to enter into the shipping contract through false representation that (1) it would file new tariffs and apply for new rates, (2) it would make no extra charge for oversize and heavy items, and (3) it would charge on the basis of weight or cubic feet, whichever was greater. Plaintiff also alleged that defendant's misrepresentations constituted a violation of sections 17.46(b) and 17.50(a)(3) of the Texas Deceptive Trade Practices Act. TEX.BUS. & COM. CODE ANN. (Vernon Supp.1987).

Defendant moved for summary judgment, arguing that neither a common law action for fraud nor a claim under a state DTPA can be maintained under the circumstances of this case because granting relief to plaintiff would, in effect, be a rebate of charges in violation of § 18 of the Shipping Act[1] which provides:

> No common carrier by water in foreign commerce ... shall charge or demand or collect or receive a greater or less or different compensation for the transportation of property or for any service in connection therewith than the rates and charges which are specified in its tariffs on file with the [Federal Maritime] Commission and duly published and in effect at the time; nor shall any carrier rebate, refund, or remit in any manner or by any device any portion of the rates or charges so specified, nor extend or deny to any person any privilege or facility, except in accordance with such tariffs....

The trial court granted summary judgment that plaintiff take nothing on its breach of contract, fraud, misrepresentation, negligence, and DTPA claims and severed plaintiff's claims under federal statutes.

---

1. This Act was repealed by the Shipping Act of 1984, 46 U.S.C. § 1701 *et seq.* (West Supp.1986); its provisions, however, are applicable to this case. 46 U.S.C. § 1719 (West Supp.1986).

State law is not preempted by federal legislation unless:

1) Congress has indicated its intent to preempt, *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission,* 461 U.S. 190, 203, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); or

2) State law is in conflict with federal law either by standing as an obstacle to Congress's purpose or because it is impossible to comply with both state and federal law. Where a partial conflict exists, state law is preempted to the extent of the conflict. *Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963); *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

There is no denying that the tariff provisions of the Shipping Act set out above are binding on both shipper and carrier and that a carrier may not charge a rate other than that which appears in its filed tariff. *United States v. Pan American Van Line, Inc.,* 359 F.Supp. 728 (S.D.N.Y.1972). Even the misquotation of rates by a carrier resulting from mistake or inadvertence does not affect the requirement that the filed tariff rate must be charged. *Gilbert Imported Hardwoods, Inc. v. 245 Packages of Guatambu Squares, More of Less,* 508 F.2d 1116 (5th Cir.1975).

In this case, plaintiff may not recover on any theory of breach of contract or negligence, because the state law permitting such recovery would conflict with federal law to the extent that it would permit recovery for mistake, inadvertence, misquotation or the contrary intent of the parties. *Florida Lime and Avocado Growers, supra.* However, plaintiff's claims based on common law fraud and violation of the DTPA present a different problem.

The purposes of the tariff filing requirements of the Shipping Act are to avoid rebating of charges, to afford an equal opportunity to all shippers to avail themselves of the filed rates, and to afford a full opportunity to competing carriers to meet such rates. H.S.Rep. No. 53, part I, 98th Cong., 2d Sess. 18–19, *reprinted in* 1984 U.S.Code Cong. & Ad.News 167, 183–184. Prior to implementation of the tariff filing requirements of the Act there had been complaints by shippers that rate secrecy and instability hampered them in competing in foreign markets. *Id.* By requiring carriers to file tariffs, make those tariffs available to all shippers, and not rebate any charges, Congress attempted to establish a system under which a carrier could not unfairly discriminate against shippers. *Id.*

The tariff filing system in effect at the time of the contract between the parties to this suit was contained in 46 U.S.C. § 817(b). It required the filing of tariff information in detail sufficient to permit a shipper to determine the charges and terms under which freight would be carried. No change in the tariff rate resulting in increased cost to the shipper was permitted until the change had been on file with the Federal Maritime Commission for at least 30 days. However, changes in the rates or charges resulting in a decreased cost to the shipper were effective upon publication and filing. Further, although a carrier could not charge, demand, or collect a greater or lesser compensation for its services than that provided by its tariffs, the Federal Maritime Commission could allow a carrier to refund a portion of the freight charges collected from a shipper or waive the collection of a portion of the charges where there was an error in the tariff of a clerical or administrative nature or an error due to inadvertant failing to file a new tariff, so long as the refund would not result in a discrimination among shippers. Refunds were permitted in the discretion of the Commission if the carrier filed a corrected tariff, agreed to publish appropriate notice, and application for the refund was filed with the Commission within 180 days from the date of shipment.

The tariff filing requirement of the Act was intended by Congress as part of a regulatory scheme designed to foster competition in the shipping industry. While this legislation clearly preempts specific state laws which control the charges and

conditions of a contract of carriage, the language of the Act does not support the conclusion that Congress intended to preempt state law controlling fraud and unfair business practices. *See e.g., Askew v. American Waterways Operators,* 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 *reh. den.,* 412 U.S. 933, 93 S.Ct. 2746, 37 L.Ed. 2d 162 (1973); *Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). Therefore plaintiff's fraud and DTPA actions are not preempted unless state law frustrate Congressional purpose or it is impossible to comply with both state and federal law. *Pacific Gas & Electric Co., supra.*

■ The Shipping Act's tariff filing requirements emphasize the rights of shippers. There is no evidence of congressional intent to grant immunity to carriers for their fraudulent acts. The grant of immunity from the Texas DTPA would provide carriers with a shield whose existence is not directly related to the accomplishment of the purpose of the tariff filing requirements. Immunity from the Texas DTPA is not necessary to the accomplishment of any congressional objective expressed by the Shipping Act.

Both the language of the Shipping Act and its legislative history, indicate that it was intended to prevent unfair discrimination against shippers, not to create a defense to unfair competition by carriers. The Shipping Act and the Texas law are complementary. Enforcement of a tariff in circumstances where there is collusion between a shipper and carrier would work to the unfair detriment of the shipper, while enforcement of the Texas law prohibiting fraud and unfair business practices fosters competition by protecting the shipper against unfair business practices of a carrier. Further, the argument that the DTPA treble damages penalty constitutes a rebate of a shipping charge has previously been rejected by the Supreme Court in *Carnation Co. v. Pacific Westbound Conference,* 383 U.S. 213, 219, n. 3, 86 S.Ct. 781, 785, n. 3, 15 L.Ed.2d 709 (1966), where the Court considered and rejected the argument that treble damage awards under anti-trust law were equivalent to unequal rebates of a shipping charge.

This case is analogous to *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931 (Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980), where the Texas Supreme Court held that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11)[2], which sets out a comprehensive regulatory system governing transportation of property, contracts of carriage, damage claims and bills of lading in interstate commerce, did not preempt the requirements of the DTPA nor prohibit a suit against a carrier based upon that statute. *See also Brunwasser v. Trans World Airlines, Inc.,* 541 F.Supp. 1338, 1345–46 (W.D.Pa.1982) (Federal Aviation Act tariff and carriage contract provisions did not preempt the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.P.S. § 201–1 *et seq.* (West Supp.1986), or common law fraud claims); *Chrysler Corp. v. Texas Motor Vehicle Commission,* 755 F.2d 1192, 1205–07 (5th Cir.1985) (Texas automobile "lemon law," TEX.REV.CIV.STAT.ANN. art. 4413(36), § 6.07 (Vernon Supp.1986), not preempted by the Magnuson–Moss Warranty Act, 15 U.S.C. § 2310 (West 1982), because compliance with both laws is not literally impossible); *Nattrass v. Rosenthal & Co.,* 641 S.W.2d 675, 678–80 (Tex.App.—Fort Worth 1982, writ ref'd·n.r.e.) (Federal Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* (West 1980), does not preempt DTPA or fraud or negligence causes of action).

The judgment of the trial court is reversed and the cause is remanded for further proceedings.

2. Now *see* 49 U.S.C. § 11707 (West Supp.1986).